Newton A. Paine
vs.
Thomas S. Flynn
} No. 80390.

June 4, 1930.

FROST, J. Heard on defendant's motion for new trial after verdict for plaintiff in the sum of $4600.

This is a suit brought by plaintiff to recover damages from defendant, a physician and surgeon of Woonsocket. for injuries alleged to have resulted from negligence in the setting of a fractured bone in plaintiff's right fore-

arm. Plaintiff in his amended declaration describes defendant's alleged negligence as follows:

"But on the contrary the defendant carelessly and negligently conducted himself in this that he improperly attempted to set the said break in an improper manner without the use of X-rays so that the plaintiff's arm and hand became permanently stiffened and was rendered useless and he was otherwise injured."

From the evidence it appeared that on Sunday morning, September 23rd, 1928, plaintiff, while attempting to crank his automobile, fractured the radius in his right fore-arm about two inches from the wrist. At the trial in January of this year there was testimony to the effect that there was still incomplete union of the fragments of the bone but the opinion was expressed that the plaintiff would have more union and ultimately a useful arm. After the accident plaintiff was taken to Dr. Flynn's office where the doctor set the bone and put the arm in splints. Dr. Flynn treated plaintiff until April 11th, 1929, but no X-ray of the arm was taken until December 8, 1928, when one was taken by Dr. Jacob S. Kelley, of Providence, acting upon a request from the United States Veterans' Bureau. A little later, that is, on December 11th an X-ray was taken at the Woonsocket Hospital. The pictures taken showed that the ends of the bones were not close together and that very little callus had formed. The X-ray taken at the hospital appears to have been taken at the instance of Dr. Goddu, a visiting surgeon at the Woonsocket Hospital to whom Dr. Flynn had related the plaintiff's condition. Because of the situation revealed by the X-ray, Dr. Goddu, on December 19, 1928, performed an operation on the arm, doing an open reduction, as he termed it. He then inserted a metal plate, the Lane plate, so-called, which was screwed to the two fragments of the radius, thereby holding them together. An X-ray was taken on January 26th, 1929, which showed, according to Dr. Goddu, that the bones were in excellent alignment but that there was only a suggestion of callus formation. The Lane plate was taken off on February 20, 1929, and since then the plaintiff received treatment, and was at the time of the trial receiving treatment, being then under the care of Dr. Goddu.

Without reciting further the details of the treatment of plaintiff's arm, it is apparent that the important questions for the jury were: Was Dr. Flynn's failure to have an X-ray taken prior to December 8, when one was taken by Dr. Kelley, negligence under all the circumstances? And if he was negligent in such respect, was the condition found in December, 1928, in any way attributable to such negligence?

In reference to the first question the jury found specially that Dr. Flynn "did not within forty-eight hours after the accident advise the plaintiff to have an X-ray taken," and also that he, "did not within two weeks after the accident advise the plaintiff to have an X-ray taken." As to the second question, inasmuch as the jury found generally for the plaintiff, it would seem that the jury believed that the defendant was negligent in not having X-rays taken and that that failure resulted in the regrettable condition in which the arm afterwards was and now is.

Was the verdict of the jury in either of the particulars mentioned justified by the weight of the evidence?

The Court thinks that it was not.

That the use of the X-ray as an aid to the proper setting of a bone is good practice and also usual practice in Woonsocket was admitted by Dr. Flynn. The defendant testified that he advised the plaintiff many times

to have an X-ray taken of his arm and suggested the Woonsocket Hospital as a place where it could be done. This was denied by plaintiff. If this were all the testimony on this point, the Court would not feel that it could do other than accept the special finding of the jury. But it appeared in testimony that when Dr. Flynn brought Paine to Dr. Goddu, the latter asked at once if an X-ray had been taken and the reply was "No." Then, as Dr. Goddu testified, Dr. Flynn walked up to Paine and he said, "didn't I ask you to take an X-ray?" and the patient said "Yes, and I refused; I didn't want it.'"

That was the testimony of Dr. Goddu. The latter appeared to the Court like a man of character and there was nothing about him or his position in this case to cause him to make a false statement or to indicate that he would deliberately fabricate testimony of the kind just mentioned.

The plaintiff appeared to the Court to be of rather an impetuous disposition; a man who might easily be impatient of precautionary measures that did not appear absolutely essential; a man rather stubborn withal, who did not willingly act upon suggestion. Such qualities were to some degree illustrated in the later treatment of the arm, when Dr. Goddu was in charge. The latter testified, (Trans. pp. 222, 223), "I can say this, that there were several periods, several groups of periods when Mr. Paine would not allow me to put on support, and I think he will have to bear me out that I myself put a great deal of time pleading with him to allow me to put on plaster; * * * * but it required a great deal of coaxing and arguments, and so forth, but I think now Mr. Paine is co-operating at the present time." 71 Q. "Do you attribute his condition in any way to his failure to co-operate and have the braces on?" A. "I feel very strongly that had he listened and done what we actually wanted him to at all times, that he would not have had deformity today."

Mr. Paine was not a child; he was a man forty years of age when the accident occurred. He could not be compelled to have an X-ray taken. While some may feel that a surgeon is open to criticism who continues to treat a patient after he has repeatedly failed to act upon advice given, yet it does not seem to the Court that the weight of the evidence in the present case shows that Dr. Flynn was guilty of negligence in failing to secure an X-ray of plaintiff's arm in the period of time after the accident when X-rays might be considered to be helpful.

Can the later condition of the arm be attributable to the lack of an X-ray?

Dr. Kelly, appearing for the plaintiff, testified that good practice requires that an X-ray be taken 36 to 48 hours after reduction of fracture and again 5 or 6 weeks after the setting of the bone. He also gave it as his opinion that Dr. Flynn did not use reasonable care, skill and diligence in treating plaintiff's injury in that he did not take X-rays during the period when the bone was knitting.

Dr. Flynn himself testified that he looked at the arm 5 or 6 weeks after it was first reduced and it looked as if the two ends of the radius were not meeting. This testimony would indicate that the doctor discovered without the X-ray what would have been revealed by the X-ray.

But aside from the question of the position of the fragments of the bone, it appeared that there was very little callus formation.

Dr. Kelley found evidence of some callus formation. Dr. Flynn found very little callus.

Dr. Goddu, after looking at the X-ray plate taken on December 8, 1928, said, (Trans. p. 212):

"No, sir, there isn't even a semblance. * * * there is a slight evi-

dence of a small callus but not an awful lot."

He then expressed the opinion that something in plaintiff's condition was responsible for delayed union which he found in this case.

(Trans. p. 227): "The only drawback in this case is that you have a rather vicious combination of a delayed lack of co-operation plus delayed union."

It appeared with considerable unanimity that very little gluey matter, which alone makes union possible, had been thrown out by the ends of the fractured bone.

In conclusion, the Court thinks that the verdict is against the weight of the evidence; that the evidence does not show that Dr. Flynn failed to advise an X-ray or that the later condition of the arm was due to the lack of an X-ray.

The verdict of the jury does not do substantial justice between the parties and defendant's motion for a new trial is therefore granted.

For plaintiff: Grim, Littlefield & Eden.

For defendant: Thomas S. Flynn.